**James B. WESLEY, Temporary Administrator of the Estate of William C. Pickard, Deceased, Appellant,**

v.

**Christine PICKARD, Appellee.**

No. 01–88–00487–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 11, 1990.

Thomas Osa Harris, Houston, for appellant.

Dermot Rigg, Judith G. Foster, Hoover, Bax & Shearer, Houston, for appellee.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

## OPINION

DUNN, Justice.

This is an appeal from an order of the probate court approving and classifying claims for child support, contractual alimony, and certain expenses incurred on behalf of minor children made against the estate of William C. Pickard by the deceased's former wife, Christine Pickard. However, the only issue on appeal concerns contractual alimony.

The marriage of William C. and Christine Pickard ended in divorce on January 24, 1983, under a consent judgment and agreed decree of divorce. Two children were born of the marriage. The consent judgment contained child support, contractual alimony, and property division provisions, among other things, and was signed by both Christine Pickard and William Pickard. The judgment expressly provided that both Christine Pickard and William Pickard agreed to be bound in contract by its terms.

As reflected in the consent judgment, Christine Pickard and William Pickard agreed that a continuing measure of support would be provided Christine Pickard after the divorce, and that such support obligation was contractual in nature. Such support, according to the consent judgment, was unrelated to the division of matrimonial property, was not intended to constitute a payment for any rights or interests Christine Pickard may have had in the matrimonial estate, and was specifically characterized as "contractual alimony." In pertinent part, the consent judgment read as follows:

> It is ordered that Respondent [William Pickard] shall pay to Petitioner [Christine Pickard] the sum of Two Thousand Five Hundred ($2500) Dollars per month for twenty-four (24) months in two (2) installments per month in the amount of One Thousand Two Hundred Fifty ($1250) Dollars each beginning on February 1, 1983, and on the 1st and 15th days of each month thereafter for a total of 48 semi-monthly payments. Beginning with the 49th payment, the alimony will reduce to the sum of One Thousand Five Hundred ($1500) Dollars per month payable in two installments per month of Seven Hundred Fifty ($750) Dollars each with the first $750 payment being the 49th payment of alimony and continuing in a like manner on the 1st and 15th day of each month thereafter for a total of 194 additional payments of $750 each as aforesaid. Alimony shall cease upon the occurrence of the first of the following events:
>
> 1. Upon the payment of the 242nd semi-monthly installment with payment number 1 being calculated as the payment due February 1, 1983;
>
> 2. The remarriage of Christine Pickard, whether common law or ceremonial;
>
> 3. The death of Christine Pickard;
>
> 4. At such time as she should fail to claim the same as ordinary income on her Internal Revenue Service income tax return.
>
> ....
>
> This agreement with regard to alimony can be modified from time to time through written agreement of the parties only. The alimony aspects hereof shall not be subject to modification by a court of law. *Alimony due and unpaid through February 1, 1985 shall be an obligation of the estate of Husband.* [The italicized language is a handwritten interlineation.]
>
> The parties understand that this is not an item subject to decree by the Court but is an item that they have agreed upon between themselves and asked the Court to approve and incorporate into this Decree. The parties intend for this to be contractually binding upon each of them. The parties intend for this *Alimony* to be non-assignable and non-transferable. [The word "Alimony" is a handwritten interlineation.]

William Pickard paid all contractual alimony through July 15, 1987. He died on

August 1, 1987. No contractual alimony payments were made thereafter. The probate court appointed James Wesley (appellant) as temporary administrator of the estate of William Pickard on August 6, 1987.

On September 1, 1987, Christine Pickard (appellee) filed an authenticated claim with the probate court for child support and contractual alimony, both as to arrearage and future payments, and for reimbursement of certain medical expenses incurred for the children, all in accordance with the consent judgment. On September 30, 1987, the temporary administrator allowed child support up to the date of William Pickard's death and rejected the remainder of her claim. Christine Pickard brought suit on her rejected claim against the administrator under Tex.Prob.Code Ann. sec. 313 (Vernon 1980).

Following a bench trial on November 11, 1987, the trial court approved Christine Pickard's claims for child support to the extent of $250 and contractual alimony. Her other claims were disapproved. The administrator appealed, urging in two points of error that the trial court erred in holding that contractual alimony continues after the death of the obligor spouse and that the divorce agreement did not expressly provide for the continuation of alimony after the death of the obligor spouse.

■ Texas case law and statutes recognize the right of the divorcing parties to enter into agreements that provide support and maintenance for a former spouse after divorce. *Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967); *Powers v. Powers*, 714 S.W.2d 384, 389 (Tex.App.—Corpus Christi 1986, no writ); *Pierson v. Pierson*, 596 S.W.2d 176, 178 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *Firestone v. Firestone*, 567 S.W.2d 889, 891 (Tex.Civ. App.—Dallas 1978, no writ); Tex.Fam.Code Ann. sec. 3.631 (Vernon Supp.1989). Such agreements have whatever legal force the law of contracts gives them. *Miller v. Miller*, 721 S.W.2d 842, 844 (Tex.1986); *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979); *Francis*, 412 S.W.2d at 33; *Mackey v. Mackey*, 721 S.W.2d 575, 578 (Tex.App.—Corpus Christi 1986, no writ);

*Underhill v. Underhill*, 614 S.W.2d 178, 180 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Pierson*, 596 S.W.2d at 178; *Firestone*, 567 S.W.2d at 891–92. The Texas Supreme Court has also held that a marital property settlement agreement, though incorporated into a final divorce decree, is treated as a contract. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984). Its legal force and its meaning are governed by the law of contracts, not by the law of judgments. *Id.*

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). A court must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393.

■ The trial court concluded as a matter of law that the only conditions terminating contractual alimony were the four recited earlier in this opinion: i.e., upon (1) payment of the 242nd installment, (2) remarriage or (3) death of Christine Pickard, or (4) Christine Pickard's failure to claim such alimony as income on her federal tax return. The trial court's conclusion results in no meaning being ascribed to the handwritten interlineation, "*Alimony due and unpaid through February 1, 1985 shall be an obligation of the estate of Husband.*" In the absence of evidence justifying a contrary interpretation, we presume that the parties to the contract intended every clause to have some meaning. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985); *Palmer v. Liles*, 677 S.W.2d 661, 665 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Here, the only reasonable interpretation of the interlineated sentence is that William Pickard and Christine Pickard intended that, in the event of William Pick-

ard's death, contractual alimony would be an obligation of the estate through February 1, 1985, and not thereafter.

We conclude that the trial court erred, as a matter of law, in its interpretation of the contract. We therefore sustain the points of error raised by James Wesley, the temporary administrator of William Pickard's estate.

The order of the trial court is reversed, and judgment is here rendered that appellee, Christine Pickard, take nothing with respect to her claim for contractual alimony after August 1, 1987, the date of William Pickard's death; otherwise, the remainder of the order is affirmed.