**Billie CARDWELL, Appellant,**

v.

**Fran SICOLA–CARDWELL, Independent Executrix of the Estate of Horace Cardwell, Appellee.**

No. 03–97–00699–CV.

Court of Appeals of Texas, Austin.

Oct. 15, 1998.

John W. Tunnell, Welch & Tunnell, Lufkin, for Appellant.

George E. Chandler, Lufkin, for Appellee.

Before YEAKEL, C.J., and JONES and B.A. SMITH, JJ.

JONES, Justice.

Appellant Billie Cardwell sued appellee Fran Sicola–Cardwell, Independent Executrix of the Estate of Horace Cardwell ("the Estate"), to enforce a spousal support provision contained in an agreement between

Horace and Billie Cardwell incident to their divorce and incorporated into their final divorce decree. Following a bench trial, the trial court rendered judgment in favor of the Estate. We will reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

After twenty-six and a half years of marriage, Horace and Billie Cardwell divorced in 1983. Immediately before the divorce, the parties entered into an Agreement Incident to Divorce (the "Agreement") in an effort to amicably divide their marital property and to provide spousal support for Billie Cardwell. The Agreement was duly incorporated into the couple's final divorce decree. Pursuant to the Agreement, Billie Cardwell was to receive monthly payments of $1,000 each, to be paid in two equal installments per month. The Agreement specifically provided that the support obligation would terminate either on the death of the wife or when 300 payments had been made, whichever occurred first.

Horace Cardwell died in 1995; his then wife, Fran Sicola–Cardwell, was named independent executor of his estate. During his lifetime, Mr. Cardwell faithfully made all support payments to Billie Cardwell as they became due, for a total of 148 payments. After his death, however, the payments were discontinued.

Billie Cardwell filed suit against the Estate seeking to enforce the support payments due after Horace's death. She alleged that pursuant to the Agreement she was entitled, as a creditor of the Estate, to the remaining 152 of the agreed-upon 300 periodic payments. After a bench trial, the trial court rendered a take-nothing judgment against Cardwell. Pursuant to Cardwell's request, the court made findings of fact and conclusions of law.

On appeal, Cardwell raises seven issues. The first three issues concern whether the trial court erred in concluding as a matter of law that so-called "contractual alimony" is a

personal obligation presumptively terminating on the obligor's death and that the obligee has the burden to overcome this presumption by showing the parties' clear and unmistakable intent to the contrary. The fourth through seventh issues challenge the trial court's fact findings that the Agreement did not contain adequate language to overcome the presumption of termination; that the periodic payments were intended to substitute for Horace Caldwell's income; and that the circumstances surrounding the making of the Agreement did not evidence clear and unambiguous intent by the parties that the payments would continue after Horace's death.

## DISCUSSION

■ Even before Texas courts could impose spousal support obligations at divorce,[1] parties to a divorce could enter into written agreements providing for the maintenance of either spouse. *See Francis v. Francis*, 412 S.W.2d 29, 32 (Tex.1967); Tex. Fam. Code Ann. § 7.006(a) (West Supp.1998). The court could then incorporate the agreement into the final divorce decree. *Id.* at § 7.006(b). Before statutory approval of such agreements, the Texas Supreme Court had determined that settlement agreements between a husband and wife obligating one spouse to make periodic payments in support of the other spouse after divorce do not constitute court-ordered alimony and therefore are not void in the State of Texas. *Francis*, 412 S.W.2d at 29. The fact that a court expressly approves such an agreement and incorporates it into the final divorce decree does not transform the contractual payments into prohibited court-ordered alimony. *Id.; see also Klise v. Klise*, 678 S.W.2d 545, (Tex.App.— Houston [14th Dist.] 1984, no writ).

### Spousal Support Settlement Agreements Are Governed By The Law of Contracts

In determining that agreements for contractual alimony are not void, the *Francis*

---

1. The Texas legislature has recently provided for limited court-ordered maintenance from the future income of one spouse for the support of the other spouse after the dissolution of the marriage. *See* Tex. Fam.Code Ann. § 8.001 (West Supp.1998). However, the eligibility require-

ments are numerous, and the maximum duration of the payments is specifically dictated. *Id.* at § 8.002, .005. In general, the scope of this newly created court-ordered maintenance is very narrow.

court clearly distinguished between *court-ordered* alimony payments and *assumed contractual obligations* for support. *Francis*, 412 S.W.2d at 33 (emphasis added). The court held that an assumed obligation for spousal support is properly characterized as a contractual duty having "whatever legal force *the law of contracts* will give to it." *Francis*, 412 S.W.2d at 31 (emphasis added).

Even before the *Francis* decision, the supreme court had held that a settlement agreement adopted in a divorce decree falls within the purview of contract law. *See Ex parte Jones*, 163 Tex.. 513, 358 S.W.2d 370, 375 (1962) (holding that judgment based on terms of settlement agreement must be interpreted under law of contracts rather than law of judgments). Since *Francis*, the supreme court has, on several occasions, confirmed that under Texas law the legal force and meaning of marital property settlement agreements are governed by the law of contracts. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984); *see also McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979) (applying law of contracts to contractual alimony agreement); *cf. Hutchings v. Bates*, 406 S.W.2d 419, 421 (Tex.1966) (holding that agreement for periodic child support payments is governed by law of contracts).

Following *Francis*, courts of appeals have consistently applied contract principles and rules of construction in interpreting agreements providing for spousal support. *See, e.g., Powers v. Powers*, 714 S.W.2d 384, 390 (Tex.App.—Corpus Christi 1986, no writ) (enforcing settlement agreement provision as action on contract); *Deen v. Deen*, 631 S.W.2d 215, 216 (Tex.App.—Amarillo 1982, no writ) (resolving dispute over contractual alimony "within the framework of certain basic principles of contract law"); *Conner v. Bean*, 630 S.W.2d 697, 700-01 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (affirming award for anticipatory breach of contract in wife's suit on contractual alimony agreement); *Myrick v. Myrick*, 601 S.W.2d 152, 153 (Tex.Civ.App.—Waco 1980, no writ) (stating that agreements to make support payments after divorce are "enforceable as any other contractual obligation"); *Mahrer v. Mahrer*, 510 S.W.2d 402, 404 (Tex.Civ.App.—

Dallas 1974, no writ) (characterizing husband's agreed spousal support obligation as "contractual obligation"); *Dicker v. Dicker*, 434 S.W.2d 707, 713 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.) (allowing recovery for breach of contract where husband failed to make contractual alimony payments).

In a case with facts nearly identical to those in the present appeal, the Beaumont Court of Civil Appeals determined that an agreement to pay spousal support survived the death of the obligor. *See Republic Nat'l Bank v. Beaird*, 475 S.W.2d 344 (Tex.Civ. App.—Beaumont 1971, writ ref'd). *Beaird* involved a settlement in which the husband agreed to pay, for the wife's support, a designated sum on a certain date each year for a specified number of payments. The husband died before the term for support payments expired, and the representatives of his estate refused to continue the payments as they became due. The wife sued the estate for the balance due pursuant to the agreement. Relying on *Francis*, the court found that the estate was obligated to the wife for the balance due under the agreement. *See id.* at 346.

The facts presented on this appeal mirror those of *Beaird*. Horace and Billie Cardwell entered into an agreement incident to their divorce whereby Horace was to pay to Billie for her support a designated sum on specific dates each month for a certain length of time. Before all the agreed-upon payments were made, Horace died, and his estate refused to honor the claim made by Billie for the remainder of the payments. We agree with the Beaumont court that these facts fall squarely within the scope of *Francis*, and thus we will apply contract principles to determine the survival of the payment obligation after Horace's death.

### Traditional Presumptions of Alimony Law Adopted by Other Jurisdictions Do Not Apply

Both parties to this appeal devote much of their argument to whether this state should adopt the presumption imposed by some jurisdictions that alimony, contractual or otherwise, ends upon the death of the obligor, with the burden falling on the obligee to overcome

the presumption by showing a clear manifestation that the parties intended to the contrary. *See* Gavin L. Phillips, Annotation, *Death of Obligor Spouse as Affecting Alimony*, 79 A.L.R.4th 10 (1990). Both parties characterize this as an issue of "first impression" in Texas. As indicated by its findings of fact and conclusions of law, the trial court determined that such a presumption should be adopted and found that Billie Cardwell did not meet her burden of showing a clear and unmistakable manifestation of the parties' intent that Horace's obligation would survive his death.

■ As discussed above, however, contractual alimony agreements in Texas are governed by the law of contracts. Under principles of contract law, contractual obligations generally survive the death of a party and bind his estate if the contract is capable of being performed by the estate representative. *See TPS Freight Distribs., Inc. v. Texas Commerce Bank–Dallas*, 788 S.W.2d 456, 458–59 (Tex.App.—Fort Worth 1990, writ denied); *see also Solomon v. Greenblatt*, 812 S.W.2d 7, 17 (Tex.App.—Dallas 1991, no writ). Thus, to the extent there is a "presumption" regarding survival of a contractual obligation after the death of one of the parties, it is exactly the converse of that advanced by the Estate and adopted by the trial court.

■ Neither the historical treatment of alimony in Texas, nor Texas case law, indicates that the general rules of alimony—i.e., *court-ordered* spousal support—should apply to *contracts* for spousal support, particularly the rule that alimony presumptively terminates on the obligor's death. *Cf. Hutchings*, 406 S.W.2d at 421 (holding that agreement for periodic child support payments is governed by law of contracts, and under contract principles payments survive obligor's death absent agreement to contrary shown by provisions of contract or surrounding circumstances). Because Texas law mandates that we apply contract principles to determine whether the obligation contained in the Agreement terminated on Horace Cardwell's death, we conclude that the trial court erred in concluding as a matter of law that contractual alimony terminates on the death of the

obligor absent a clear and unambiguous manifestation of intent to the contrary and in ruling that the obligee has the burden to overcome the presumption of termination.

### The Agreement Did Not Create a Personal–Services Contract

■ As previously stated, contractual obligations generally survive the death of one of the parties. We recognize, however, that contracts for "personal services" are an exception to this rule. *See TPS Freight*, 788 S.W.2d at 457–8. In a personal-service contract, survival of a certain party is a constructive condition to any further obligation of either party to the contract. *Id.; Nutt v. Members Mutual Ins. Co.*, 474 S.W.2d 575, 576 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). This is because performance of this type of contractual obligation depends on the existence of a particular person, or because one party relies on the skill or character of the other party, or because the contract is based on a personal confidence between the parties. *See, e.g., Peniche v. Aeromexico*, 580 S.W.2d 152, 156–57 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) (personal confidences); *Lancaster v. Greer*, 572 S.W.2d 787, 790 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.) (skill or character); *Nutt*, 474 S.W.2d at 576 (existence of person).

■ In the present case, the Estate contends that the Agreement was a "personal" contract as to Horace Cardwell, therefore terminating upon his death. We disagree. The Agreement does not depend on the skill or character of Horace Cardwell, nor on his existence, and it is not based on a confidence between the parties. Mr. Cardwell's only obligation was to make monthly payments of a specified amount for a specified period of time. He did not expressly or impliedly undertake any special services that could be completed only by him. The Agreement simply called for a payment of money. His estate is certainly able to complete that task. The amount owed is merely a debt with no distinctively personal characteristics.

■ Further, the fact that the Agreement by its terms is not assignable or transferable does not make it a contract for personal

services. Relying on authority holding that personal contracts cannot be assigned, the Estate argues that because the contract was "unassignable and nontransferable," the parties intended that the obligation would be performed by Horace and no one else, making it a "personal" contract that would terminate on Horace's death. *See Nutt*, 474 S.W.2d at 576; *Salter v. Jones*, 348 S.W.2d 381, 383 (Tex.Civ.App.—El Paso 1961, no writ). We reject this proposition. Assuming, without deciding, that all personal contracts are neither assignable nor transferable, this does not mean that all contracts that are not assignable or transferable are necessarily personal. Parties may choose to negotiate for a non-assignable contract for any number of reasons other than to make the contract personal.

Because there was nothing personal about Horace Cardwell's obligation to pay spousal support, we conclude that the trial court was incorrect in finding that the parties intended the Agreement to be a personal obligation ending with Horace Cardwell's death, and that the court likewise erred in concluding that agreements to pay contractual alimony are personal obligations as a matter of law.

### The Agreement Is Not Ambiguous

■ In construing a written contract, our primary concern is to ascertain the true intention of the parties as expressed through the provisions of the contract, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983), and to give effect to this written expression of the parties' intent, *Balandran v. Safeco Insurance Company of America*, 972 S.W.2d 738, 741 (Tex.1998). Although parol evidence relating to the parties' intent is not admissible to create an ambiguity, "the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Id.* A contract is ambiguous only if, after applying appropriate rules of construction, it is subject to two or more reasonable interpretations. *Id.* If, on the other hand, the contract language can be given a definite legal meaning, it is not ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Alba Tool & Supply Co. v. Industrial Contractors Inc.*, 585 S.W.2d 662, 664 (Tex.1979). If the contract can only be given one reasonable construction, it is unambiguous and it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). Whether a contract is ambiguous is a question of law to be determined by the court. *National Union*, 907 S.W.2d at 520.

■ In the present case, the Estate argues that several provisions contained in the Agreement, in combination with other relevant circumstances, create an ambiguity as to the Cardwells' intent concerning the survival of the contractual alimony obligation: (1) language connected the support to obligations arising from the marital relationship; the difference in earning capacities; the wife's need for future support; and the benefits the wife may have received from a continuation of the marriage; (2) Mr. Cardwell was allowed to take an income tax deduction knowing this benefit is not available to the Estate; (3) the Agreement recited that it was "a full and final settlement of the parties' rights and obligations"; (4) the Agreement provided that it would be "unassignable and nontransferable"; (5) the parties are alleged to have known the "well-established" principle that alimony terminates on the obligor's death; (6) the attorney who drafted the Agreement "understood" that it would terminate on Horace's death and believed that he was merely documenting the parties' intent; and, (7) Horace Cardwell's age at the time of the Agreement meant that he would have been 87 years old had he lived to complete all 300 payments.

■ After carefully considering each of the provisions the Estate advances, we are not convinced they render the Agreement ambiguous as to the issue at hand. To determine whether a contract is ambiguous, we must look at the contract *as a whole* in light of the circumstances present when the parties made the agreement. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996) (emphasis added). We are satisfied that the relevant portion of the Cardwells' Agreement, considering the contract as a whole and the surrounding circumstances at the time it was executed, is not open to more than one reasonable construction. The Agreement unambiguously provides that the

obligation for spousal support ends on the occurrence of one of two specified events: (1) the death of the wife, or (2) the making of 300 payments. If it had been the intent of the parties to include the death of the husband as a terminating event, it would have been simple to provide as much. We are unable to say that the Agreement can reasonably be construed as expressing an intent that Horace Cardwell's obligation would end with his death.[2]

After considering all the provisions of the Agreement and the circumstances surrounding its execution, we hold that the Agreement is not ambiguous and that it manifests the clear intent of the parties that Horace Cardwell's spousal support obligation would survive his death. We therefore determine that the Estate is responsible for support payments accruing after Horace's death.

### CONCLUSION

We reverse the trial court's judgment that Billie Cardwell take nothing by this suit. We render judgment that Billie Cardwell recover from Fran Sicola–Cardwell, Independent Executrix of the Estate of Horace M. Cardwell, $102,359.72, being the present value, as found by the trial court, of the remaining 152 payments of $1,000 each; we also render judgment that Billie Cardwell recover from the Estate attorney's fees in the amount of $10,000 through trial plus $7,500 for appeal to this Court, as well as $604.57 for expenses and court costs, all as found by the trial court.

---

2. We do not regard *Wesley v. Pickard*, 783 S.W.2d 589 (Tex.App.—Houston [1st Dist.] 1990, no writ), which relied on a unique interlineated provision in the contract, as being to the contrary.