Opinion issued November 21, 2012



In The

# Court of Appeals

For The

## First District of Texas

_____

## NO. 01-11-00566-CV

_____

**LOIS A. BENNETT, AS REPRESENTATIVE OF THE ESTATE OF NORMAN C. BENNETT, JR., Appellant**

**V.**

**SPECTRUM CONSTRUCTION, INC., Appellee**

On Appeal from the 55th District Court
Harris County, Texas
Trial Court Case No. 2009-70812

## MEMORANDUM OPINION

Lois Bennett, as representative of the estate of Norman C. Bennett, Jr., appeals from a take-nothing judgment in favor of Spectrum Construction following a bench trial. In one issue, Lois argues that the trial court erred by rendering a

take-nothing judgment because, (1) her husband, Norman Bennett, had a personal service contract with Spectrum Construction, which was terminated upon Norman's death, and (2) Norman was entitled to recover for work performed under quantum meruit.

We reverse and remand for a new trial.

## Background

On June 6, 2003, Spectrum Construction and Norman Bennett signed a subcontractor base agreement supplying terms for Norman to provide electrical work on future jobs. Norman was a self-employed electrician doing business as Bennett Electric Company. The president of Spectrum Construction, Allen Petrucciani, had hired Norman on many prior occasions.

Around September 2006, Spectrum Construction had been hired to turn a Schlozsky's into a Vision Source. On September 28, 2006, Spectrum Construction contracted with Norman to serve as the electrician on the Vision Source project. At trial, Allen testified that part of the reason Spectrum Construction contracted with Norman was on the basis of Norman's skill and knowledge as an electrician. He also said that Spectrum Construction tries "to hire the electrician who is best suited for the project . . . and the project was most appropriate for Norman."

After he started work under his contract but before he completed the work, Norman died of a heart attack. Lois was appointed as executor of Norman's estate.

2

Lois brought suit against Spectrum Construction, based on quantum meruit, alleging that Spectrum Construction owed Norman for the time and services provided before his untimely death.

It is undisputed by the parties that Norman performed *some* work before his death, though the parties did dispute the amount of work done and whether Spectrum Construction could offset its costs for completing the electrical work against Lois's claim. Following a bench trial, the trial court rendered a take-nothing judgment against Lois.

## Standard of Review

When, as here, the trial court did not make findings of fact or conclusions of law, we infer all facts necessary to support the judgment if they are supported by the evidence. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). If a complete reporter's record is part of the appellate record, the legal and factual sufficiency of the trial court's implied findings may be challenged on appeal using the same standards of review applicable to a jury's findings. *Mays v. Pierce*, 203 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

An appellant attacking the legal sufficiency of an adverse finding on an issue on which she had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v.*

3

*Francis*, 46 S.W.3d 237, 241 (Tex. 2001).  The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding.  *See id.*  The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review.  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When examining a legal sufficiency challenge, an appellate court reviews the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it.  *Id.* at 822.  We consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence contrary to the finding unless a reasonable fact finder could not disregard it.  *Id.* at 827.  In an appeal of a judgment rendered after a bench trial, we may "not invade the fact-finding role of the trial court, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony."  *Volume Millwork, Inc. v. W. Hous. Airport Corp.*, 218 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

## Liability

In the first part of her sole issue, Lois argues that the evidence establishes as a matter of law that she can recover under quantum meruit against Spectrum Construction.  Specifically, she argues that (1) Norman had a personal service

4

contract with Spectrum Construction, (2) the personal services contract was terminated upon Norman's death, and, accordingly, (3) she can recover under quantum meruit.

Lois sought to recover from Spectrum Construction under the theory of quantum meruit. Quantum meruit is an equitable remedy based on the notion of an implied contract preventing unjust enrichment. *See City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e). To recover under quantum meruit the

> claimant must prove that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged [and] used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 502 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

As a general rule, the presence of an express contract bars recovery under quantum meruit. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). It is undisputed that there was a contract between Norman and Spectrum Construction concerning the work performed by Norman. The question, then, is whether any exception applies to allow Lois to recover under quantum meruit.

5

The Supreme Court of Texas has recognized three exceptions to the general rule that an express contract bars recovery under quantum meruit. "First, recovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the defendant's breach, the plaintiff is prevented from completing the contract." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). There is no allegation or evidence in the record that Spectrum Construction breached the contract first or in any way prevented Norman from completing the contract. Accordingly, this exception does not apply.

Second, "[r]ecovery in quantum meruit is sometimes permitted when a plaintiff partially performs an express contract that is unilateral in nature." *Id.* at 937. It is undisputed that the contract between Norman and Spectrum Construction was bilateral. Accordingly, this exception does not apply.

Third, a breaching plaintiff in a construction contract can recover the reasonable value of services less any damages suffered by the defendant if the defendant accepts and retains "the benefits arising as a direct result of the [plaintiff's] partial performance." *Id.* The parties dispute whether Norman's death constitutes a breach of the contract. Central to this dispute is whether Norman's contract was a contract for personal services.

"Under the principles of contract law, contractual obligations generally survive the death of a party and bind his estate if the contract is capable of being

6

performed by the estate representative." *Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 726 (Tex. App.—Austin 1998, pet. denied). A personal services contract, in contrast, is "terminated by death." *Gilliam v. Kouchoucos*, 340 S.W.2d 27, 28 (Tex. 1960). A personal services contract is one that "depends on the existence of a particular person, . . . on the skill or character of the other party, or . . . on a personal confidence between the parties." *Cardwell*, 978 S.W.2d at 726; *see also Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895–96 (Tex. 1962) (holding personal service contract is done personally by a particular individual versus a contract for services performed by a corporation).

Though Spectrum Construction contracted with the Bennett Electric Company, it is a sole proprietorship. "A sole proprietorship does not have a separate legal existence distinct from the operator of the business." *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Accordingly, Spectrum Construction contracted with Norman individually.

During trial, Allen stated that part of the reason Spectrum Construction contracted with Norman was on the basis of his skill and knowledge as an electrician. Allen also testified that Spectrum Construction tries "to hire the electrician who is best suited for the project . . . and the project was most appropriate for Norman." In addition, the record shows that Allen and Norman had an ongoing work relationship and that Spectrum Construction regularly relied

7

on Norman. Based on the above testimony, we conclude that Norman was hired for projects because of his personal knowledge and skill, and Spectrum Construction had confidence and trust in Norman's work.

The record does indicate that Norman had two other electricians working with him. The record also indicates, however, that they were lower-skilled electricians, that Norman was doing work under the contract, that they were working under the direction of Norman, and that Norman was the party responsible for the completion of the work. Accordingly, this fact does not undercut the claim that the contract was a personal services contract.

Similarly, Spectrum Construction argued at trial that, while they did award the contract to Norman, they could have awarded the contract to any number of electricians. No court has held that, in order for a contract to be classified as a personal service contract, there must be a showing that the services provided could only have been performed by that one person, and we decline to adopt such a holding here. A party is only required to show that the contract depended on the skill or character of the other party, not that it depended on the skill or character of the other party to the exclusion of all other people. *See Cardwell*, 978 S.W.2d at 726.

We hold Norman's contract with Spectrum Construction was a personal service contract. Because it was a personal service contract, it terminated upon

8

Norman's death and did not constitute a breach. *See id.* (holding survival of certain person in a personal service contract is constructive condition to any further obligation of either party of contract).

If the three exceptions recognized in *Truly* are the only available exceptions to recovering under quantum meruit when a contract exists, Lois is essentially thrust into a situation in which she cannot recover at all for the work performed by Norman. Substantial performance is a condition precedent to recovery under an express contract. *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995). While the parties dispute how much work Norman performed prior to his death, no one argues that he substantially performed under the contract. Accordingly, breach of contract would not have been a viable path for recovery. If the *Truly* exceptions are the only exceptions to allow a party to recover under quantum meruit, then that is also not a viable path for recovery. This would mean, then, that a plaintiff who has breached a contract can recover under quantum meruit, while a plaintiff who has not breached but also cannot complete the contract due to circumstances beyond his control cannot recover at all. This would have the effect of forcing a party who believes he may not be able to substantially complete the contract due to factors beyond his control to either stop work and breach the contract or continue working with the risk of being unable to recover at all. We do not see this as a viable result.

We also do not find it to be supported by the law. In *Truly*, after the supreme court determined that the three exceptions did not apply to the plaintiff, it continued to determine whether the principles of quantum meruit applied to him in general. 744 S.W.2d at 938. This would have been unnecessary if the three exceptions the court had recognized were exclusive.

Similarly, in *Pepi Corp.*, we recognized a common theme to the *Truly* exceptions: "an inability to recover under contract because of a failure of this condition precedent [of substantial performance]—either because of a breach preventing completion of the condition precedent or because of a lack of any legal obligation that creates the condition precedent." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 463 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). After holding that the Truly exceptions did not apply to the plaintiff, we went on to analyze whether the plaintiff fell under the common theme of the exceptions and concluded he did not. *Id.*

In *Benson*, the Fort Worth Court of Appeals recognized another exception to the general rule that a party cannot recover under quantum meruit when a contract exists. *Benson v. Harrell*, 324 S.W.2d 620, 623 (Tex. Civ. App.—Fort Worth 1959, writ ref'd n.r.e.). It held, "There may be recovery on quantum meruit for the reasonable value of the part of the contract performed where there has been a mutual abandonment, or where further performance is prevented by a cause for

10

which neither party is responsible and by reason of which further performance is excused." *Id.* This exception is in line with the common theme to the *Truly* exceptions. It would also allow recovery for a plaintiff who has not substantially performed through no fault of his own. Accordingly, we adopt the holding of the Fort Worth Court of Appeals.

It is undisputable that Norman's death prevented further performance and that neither party is responsible for Norman's death. Because we have held that the contract is a personal service contract, death excuses further performance of the contract. *See Cardwell*, 978 S.W.2d at 726 (holding survival of certain person in a personal service contract is constructive condition to any further obligation of either party of contract). Accordingly, the express contract was not a bar to Lois's recovery under quantum meruit.

As stated above, to recover under quantum merui,t Lois must prove that Norman rendered valuable services that were accepted and used by Spectrum Construction under such circumstances that reasonably notified Spectrum Construction that Norman was expecting to be compensated. *See Thumann*, 226 S.W.3d at 502; *City of Ingleside*, 554 S.W.2d at 943.

During trial, Spectrum Construction's representative conceded that Bennett provided valuable services to and accepted by Spectrum Construction in which Bennett expected to be paid.

11

Q:  You conceded that Norman provided services for two days on the job correct?

A:  It appears to be.

Q:  Okay. Do you concede that Spectrum accepted the benefit of those services?

A:  Yes.

Q:  Did you concede that at the time Spectrum accepted the benefit of those services, Spectrum expected to pay for those services?

A:  Yes.

Q:  Do you concede that Spectrum got the benefit of the permits?

A:  Yes.

Q:  And do you concede that Spectrum should pay for the cost of the benefit of those permits?

A:  Yes.

No contrary evidence was presented at trial. We hold that there is legally sufficient evidence in the record to support Lois's claim for quantum meruit. We sustain the first portion of Lois's sole issue.

## Damages

In the remainder of her sole issue, Lois contends that the trial court erred in granting a take-nothing judgment in favor of Spectrum Construction because there was sufficient evidence in the record to support her claim for damages.

Lois testified that Norman worked for eight days and completed both the "T-Pole" phase and the demolition phase. In contrast, Allen testified that Norman

12

worked two days and only completed the "T-Pole" phase. Though the amount of work completed is in dispute, both parties concede that at least some work was done. Nevertheless, the court rendered a take-nothing judgment.

After the trial, the court indicated that it believed Spectrum Construction could offset the costs incurred in completing the work that exceeded the amount of contract price. The concept behind offset is to allow parties with *mutual debts* the ability pay what is owed to one another. *Sommers v. Concepcion*, 20 S.W.3d 27, 35 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Pursuant to Texas law, Spectrum Construction pleaded as an affirmative defense, "that the damages claimed by [Norman] should be offset by the cost of the labor and materials expended by [Spectrum Construction] in completing the work left unfinished by Bennett Electric Company." *See* Tex. R. Civ. P. 94*; Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980) (acknowledging offset as an affirmative defense, which must be pleaded).

As we have held above, however, Norman did not breach his contract. Instead, the contract merely terminated. While contractual obligations generally survive the death of one of the parties, a personal service contract terminates at death. *Cardwell*, 978, S.W.2d at 726. It is this termination that prevents a party from recovering under a claim of breach of contract. *See id.* at 726, 728 (holding contract was not for personal services and, therefore, plaintiff could recover for

13

breach of contract). With no breach, Norman does not owe Spectrum Construction for the costs incurred by Spectrum Construction to complete the Vision Source job after Norman's death. In other words, Spectrum Construction does not have a conclusive claim against Norman. Therefore, Bennett does not owe a debt to Spectrum Construction, making offset inappropriate.

We sustain the remainder of Lois' sole issue.

## Conclusion

When the evidence is insufficient to support an award of zero damages, but a fact issue remains as to the amount to be awarded, the proper remedy is to remand for a new trial. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548–49 (Tex. 2009) (remanding for new trial when right to attorneys' fees established as a matter of law, when jury awarded zero dollars in attorneys' fees, and when fact issue remained about proper amount of attorneys' fees to award). Because damages are unliquidated and liability is contested, we must remand for a new trial on liability as well. *See* TEX. R. APP. P. 44.1(b) (prohibiting separate trial solely on unliquidated damages if liability is contested).

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

14