T.C. Memo. 2017-234

UNITED STATES TAX COURT

COURTLAND L. LOGUE, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29096-15.                     Filed November 27, 2017.

J. Winston Krause, for petitioner.

Jeffrey D. Heiderscheit and Brock E. Whalen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge: Respondent determined a deficiency in petitioner's Federal

income tax and an accuracy-related penalty under section 6662(a)[1] for tax year

2010 of $49,000 and $9,800, respectively. The issues for decision are whether

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year at issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

[*2] petitioner is: (1) entitled to an alimony deduction for a payment he made to Brenda G. Williams (Ms. Williams), his ex-spouse, in 2010, and (2) liable for an accuracy-related penalty under section 6662(a).

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Texas when the petition was filed.

On May 15, 2006, petitioner and Ms. Williams entered into a premarital agreement that stated in pertinent part:

(11)   The parties further agree that in the event of divorce, the following additional provisions shall apply notwithstanding the other provisions of this agreement:

(a)   The Husband [petitioner] shall pay a lump sum settlement to the Wife [Ms. Williams] described as follows:

ONE HUNDRED THOUSAND AND NO 100/DOLLARS ($100,000.00) plus, in the aggregate, the amount of TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) multiplied by the number of years the parties are married to each other whereas years equal number of annual anniversaries.

(b)   Both parties waive the right to property settlement, except as otherwise provided herein.

(12)   This agreement shall be controlled, construed and given effect by and under the laws of the State of Texas. * * *

**[\*3]**   On May 20, 2006, petitioner married Ms. Williams.  From 2006 through 2010 they lived in Texas.

On July 23, 2010, petitioner and Ms. Williams separated.  On September 2, 2010, they entered into a marital settlement agreement (MSA).  Chip S. Ross, petitioner's nonattorney business manager, drafted that agreement, which stated in pertinent part:

**Spousal Maintenance:**

After careful consideration of the circumstances and all the other terms of this agreement and other agreements that the parties may have made, the parties agree the Petitioner shall pay to the Respondent [Ms. Williams] One Hundred Forty Thousand and No/100 Dollars ($140,000.00).  Notwithstanding the aforementioned payment, the parties agree to waive any rights or claims that he or she may have now or in the future to receive any rehabilitative or permanent spousal maintenance from the other party.

\*        \*        \*        \*        \*        \*        \*

**Governing Law:**

The parties agree that this document is intended to be a full and an entire settlement and agreement between them regarding the marital rights and obligations and that this agreement, and all contents within and attached, shall be interpreted and governed by the laws of the State of Texas.

\*        \*        \*        \*        \*        \*        \*

**[\*4]**  **Successions:**

The parties each acknowledge that this agreement, and each provision of it, is expressly made binding upon the heirs, assigns, executors, administrators, representatives and successors in the interest of each party.

On September 3, 2010, petitioner and Ms. Williams signed an attachment to the MSA.  That attachment modified the amount petitioner owed to Ms. Williams under the "Spousal Maintenance" provision in the MSA from $140,000 to $117,970.97.[2]

On November 8, 2010, the District Court for the Two Hundred and Sixty First Judicial District in Travis County, Texas (district court), issued a final decree of divorce (divorce decree).  That divorce decree incorporated the terms and provisions of the MSA.[3]

---

[2]In that attachment to the MSA, petitioner and Ms. Williams agreed that during 2010 petitioner had already paid Ms. Williams "Pre-paid Expenses" of $22,029.03 (Ms. Williams' pre-paid expenses).  Accordingly, petitioner and Ms. Williams agreed that petitioner could deduct that amount from the $140,000 that he owed Ms. Williams under the MSA.

[3]The divorce decree stated in pertinent part:

**Settlement Agreement**

THE COURT ORDERS AND DECREES that all of the terms and provisions of the Martial Settlement Agreement between the parties and dated September 2, 2010, which is attached and incorporated by

(continued...)

**[*5]**  On November 8, 2010, petitioner remitted a check for $117,970.97 to Ms. Williams (petitioner's remittance).[4]  On November 9, 2010, Ms. Williams' bank processed that check for payment.

Petitioner hired a certified public accountant (C.P.A.) to prepare his 2010 Form 1040, U.S. Individual Tax Return (return).  In that return petitioner deducted "Alimony paid" of $172,000.[5]

On August 17, 2015, respondent issued to petitioner a notice of deficiency (notice) for tax year 2010.  In that notice, respondent determined that (1) petitioner's payment did not constitute alimony under section 71 and was therefore not deductible by petitioner[6] and (2) petitioner was liable for an accuracy-related

---

[3](...continued)
reference, are hereby approved and incorporated, merged into, and made part of this court order, and the parties are ordered to comply with all terms and conditions of said Marital Settlement Agreement, but that it shall survive this order.

[4]We will refer to petitioner's remittance of $117,970.97 and his payments to Ms. Williams for Ms. Williams' pre-paid expenses of $22,029.03 as petitioner's payment.

[5]During 2010 petitioner paid alimony of $32,000 to a former spouse other than Ms. Williams.  Accordingly, the "Alimony paid" in petitioner's 2010 return reflects a deduction for that payment as well as  petitioner's payment.  See supra notes 2 and 4.

[6]Respondent determined that petitioner's $32,000 alimony payment in 2010
(continued...)

**[\*6]** penalty under section 6662(a).  Petitioner timely filed a petition for redetermination of the deficiency and the accuracy-related penalty.

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace.  Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers must comply with specific requirements for any deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. at 440.  Taxpayers must also maintain adequate records to substantiate the amounts of any credits and deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

In certain circumstances the burden of proof shifts to the Commissioner if the taxpayer introduces credible evidence with respect to a relevant factual issue.  Sec. 7491(a).  Because we decide the issues in this case on the preponderance of

---

[6](...continued)
to a former spouse other than Ms. Williams of $32,000 did constitute alimony under sec. 71 and therefore was deductible by petitioner.

**[\*7]** the evidence, the burden of proof is irrelevant.  See, e.g., Estate of Turner v. Commissioner, 138 T.C. 306, 309 (2012).

## II.     Alimony Deduction

We first turn to whether petitioner is entitled to an alimony deduction for a payment he made to Ms. Williams in 2010.

### A.     Deductible Alimony Payments for Tax Purposes

Section 215(a) allows a deduction for the payment of alimony as defined in section 71(b), which provides:

> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>
>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>
>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>>
>> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

**[*8]**  If a payment satisfies all of these factors, then the payment is alimony; if it fails to satisfy any one of these factors, then it is not.  Jaffe v. Commissioner, T.C. Memo. 1999-196, 1999 WL 398130, at *4.  In this case the parties agree that the requirements of subparagraphs (A), (B), and (C) have been satisfied.  They disagree solely about whether the payment satisfies subparagraph (D); i.e., whether petitioner's obligation to pay Ms. Williams under the MSA would have terminated in the event of her death.

B.    Section 71(b)(1)(D) Framework

Under section 71(b)(1)(D), the payor must have no liability to continue payments after the recipient's death; otherwise the payor may not deduct any required related payments.  See Johanson v. Commissioner, 541 F.3d 973, 976-977 (9th Cir. 2008), aff'g T.C. Memo. 2006-105; Kean v. Commissioner, 407 F.3d 186, 191 (3d Cir. 2005), aff'g T.C. Memo. 2003-163.  To determine whether a payor has liability to continue payments after the payee's death, we apply the following sequential approach:  (1) the Court first looks for an unambiguous termination provision in the applicable divorce instrument; (2) if there is no unambiguous termination provision, then the Court looks to whether payments would terminate at the payee's death by operation of State law; and (3) if State law is ambiguous as to the termination of payments upon the death of the payee, the

[*9] Court will look solely to the divorce instrument to determine whether the payments would terminate at the payee's death. See Hoover v. Commissioner, 102 F.3d 842, 847-848 (6th Cir. 1996), aff'g T.C. Memo. 1995-183; Okerson v. Commissioner, 123 T.C. 258, 264-265 (2004); Stedman v. Commissioner, T.C. Memo. 2008-239, 2008 WL 4704143, at *2.

      1.     Explicit Provision in MSA

First, we must look to the plain language of the divorce documents to determine whether there is an unambiguous provision terminating petitioner's obligation to pay Ms. Williams in the event of her death. The divorce decree incorporated the terms of the MSA and ordered petitioner and Ms. Williams to comply with the terms and conditions of the MSA. Therefore, we look to the MSA to see whether it contains an unambiguous provision terminating petitioner's obligation to pay Ms. Williams upon her death.

The relevant portion of the MSA states in pertinent part:

**Spousal Maintenance:**

After careful consideration of the circumstances and all the other terms of this agreement and other agreements that the parties may have made, the parties agree the Petitioner shall pay to the Respondent [Ms. Williams] One Hundred Forty Thousand and No/100 Dollars ($140,000.00). Notwithstanding the aforementioned payment, the parties agree to waive any rights or claims that he or she

[*10] may have now or in the future to receive any rehabilitative or permanent spousal maintenance from the other party.

On the record before us, we find that the MSA did not contain an unambiguous provision terminating petitioner's obligation to pay Ms. Williams in the event of her death.[7]

2.    Texas Law

Since we have found the MSA did not contain an unambiguous provision terminating petitioner's obligation to pay Ms. Williams in the event of her death, we must now determine whether that obligation would have terminated in the event of Ms. Williams' death by operation of Texas law.

Under Texas law, "[t]o promote [the] amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse." Tex. Fam. Code Ann. sec. 7.006(a) (Vernon

---

[7]Petitioner's contention that this Court must consider the parties' intent when determining whether petitioner's obligation to pay Ms. Williams would terminate upon her death is erroneous.  The definition of alimony for tax purposes turns on fulfillment of the statutory test and not on the intent of the parties to a divorce proceeding.  See Okerson v. Commissioner, 123 T.C. 258, 264-266 (2004); see also Rosenthal v. Commissioner, T.C. Memo. 1995-603, 1995 WL 760398, at *2 ("Whether or not the parties intended for the payments to be deductible to petitioner, we must focus on the legal effect of the agreement in determining whether the payments meet the criteria under section 71.").

**[\*11]** 2006). "[S]uch alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law."[8] McCollough v. McCollough, 212 S.W.3d 638, 642 (Tex. App. 2006). Under Texas contract law, contractual support payments do not terminate on the death of the former payee spouse absent agreement to the

---

[8]Petitioner's contention that Tex. Fam. Code Ann. sec. 8.056(a) (Vernon 2006) operates to terminate petitioner's obligation to pay her in the event of her death is erroneous. In making that contention, petitioner fails to realize that this case is governed by Texas State contract law, not Tex. Fam. Code Ann. ch. 8. In the MSA petitioner and Ms. Williams agreed that the MSA "shall be interpreted and governed by the laws of the State of Texas." As stated above, "alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law." See McCollough v. McCollough, 212 S.W.3d 638, 642 (Tex. App. 2006).

Assuming for the sake of the argument that petitioner is arguing that Tex. Fam. Code Ann. ch. 8 governed the MSA, we disagree. The MSA manifests no intent that ch. 8 govern petitioner's obligation to pay Ms. Williams. See id. at 646. There is no reference in the MSA or the divorce decree to ch. 8. See id. Moreover, provisions in the MSA violate ch. 8. Tex. Fam. Code Ann. sec. 8.001 (Vernon 2006) provides: "'Maintenance' means an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." In this case, the MSA provided that petitioner would pay Ms. Williams a single lump-sum payment.

Finally, "[t]he fact that a court expressly approves * * * an agreement and incorporates it into the final divorce decree does not transform contractual alimony payments into court-ordered maintenance payments subject to the termination and modification provisions of chapter 8 of the [Texas] [F]amily [C]ode." McCollough, 212 S.W.3d at 648.

**[*12]** contrary shown by the contract or surrounding circumstances. See Cardwell

v. Sicola-Cardwell, 978 S.W.2d 722, 726 (Tex. App. 1998).[9]

On the record before us, we find that petitioner's obligation to pay Ms.

Williams would not have terminated by operation of Texas law in the event of her

death.[10] On that record, we find that petitioner's payment fails to satisfy the

_____

[9]In Cardwell v. Sicola-Cardwell, 978 S.W.2d 722, 726 (Tex. App. 1998),
the State court of appeals, holding that contractual alimony agreements in Texas
are governed by the law of contracts and generally survive the death of one of the
parties stated:

> Neither the historical treatment of alimony in Texas, nor Texas
> case law, indicates that the general rules of alimony --i.e., court-
> ordered spousal support--should apply to contracts for spouse
> support, particularly the rule that alimony presumptively terminates
> on the obligor's death. Cf. Hutchings, 406 S.W.2d at 421 (holding
> that agreement for periodic child support payments is governed by
> law of contracts, and under contract principles payments survive
> obligor's death absent agreement to contrary shown by provisions of
> contract or surrounding circumstances). * * *

[10]Petitioner's contention that under Texas law he did not have an obligation
to pay Ms. Williams in the event of her death because he had already paid her on
the date of divorce is irrelevant. In making that contention, petitioner fails to
understand the standard articulated by sec. 71(b) and instead relies erroneously
upon the fact that he actually made the payment on the date of divorce. The
complete termination upon the death of the payee spouse of all payments made as
alimony is an indispensable part of Congress' scheme for deducting a payment as
alimony for tax purposes. See H.R. Rept. No. 98-432 (Part II) at 1496 (1984),
1984 U.S.C.C.A.N. 697, 1138. The fact that payments were in fact made
simultaneously with the execution of the agreement is irrelevant. Webb v.
Commissioner, T.C. Memo. 1990-540; see also Muñiz v. Commissioner, 661 F.

(continued...)

**[\*13]** requirements for alimony under section 71(b)(1) and is not deductible under section 215(a).

III.    <u>Section 6662(a) Accuracy-Related Penalty</u>

We next address the accuracy-related penalty under section 6662(a) determined in the notice.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to negligence or disregard of rules or regulations or to any substantial understatement of income tax.  Section 6662(d)(1)(A) defines a substantial understatement as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000.  Section 6662(d)(2)(A) defines "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and

[10](...continued)
App'x 1027, 1030 (11th Cir. 2016) (stating that a taxpayer's prompt payment is irrelevant to whether section 71(b)(1)(D) was satisfied and whether the payment was the kind of payment that Congress intended to be deductible), <u>aff'g</u> T.C. Memo. 2015-125.

**[\*14]** that the taxpayer acted in good faith with respect to, that portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to any accuracy-related penalty under section 6662(a) determined in the notice. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy the burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Although respondent bears the burden of production with respect to the accuracy-related penalty under section 6662(a), respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * [T]he taxpayer bears the burden of proof with regard to those issues." Id. On the record before us, we find that respondent has carried the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).

**[\*15]** It is respondent's position that petitioner is liable for the accuracy-related

penalty for tax year 2010 because his underpayment is due to a substantial

understatement of income tax for that year under section 6662(b)(2). In his 2010

return petitioner showed a "Total Tax" of $204,122. In the notice respondent

determined a deficiency of $49,000. We agree with respondent that there is a

substantial understatement of income tax for petitioner's tax year 2010. See sec.

6662(d)(1) and (2)(A).

Petitioner did not address the accuracy-related penalty either in his pretrial

memorandum or at trial.

On the record before us we find that petitioner has failed to carry his burden

of establishing that there was reasonable cause for, and that he acted in good faith

with respect to, the underpayment for his tax year 2010. See sec. 6664(c)(1). On

that record, we find that petitioner has failed to carry his burden of establishing

that he is not liable for his tax year 2010 for the accuracy-related penalty because

of a substantial understatement of income tax under section 6662(b)(2).[11]

---

[11]In the notice, respondent determined that the underpayment of tax was attributable to one or more of the following: (1) negligence or disregard of rules or regulations; (2) substantial understatement of income tax; (3) substantial valuation misstatement (overstatement); (4) transaction lacking economic substance. Because we have already held that petitioner is liable under sec. 6662(a) because of a substantial understatement of income tax under sec.

(continued...)

**[\*16]** We have considered all the other arguments of the parties and, to the extent not discussed above, find those arguments irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[11](...continued)
6662(b)(2), we need not reach those alternative arguments. Sec. 1.6662-2(c), Income Tax Regs.