123 T.C. No. 14


UNITED STATES TAX COURT


JOHN R. AND PATRICIA G. OKERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7702-03.                  Filed September 9, 2004.


        In 1995, a State court (court) decreed that P pay
to O in connection with their divorce 113 monthly
payments of alimony totaling $117,000.  The 1995 decree
stated that this alimony would terminate if O died
before the $117,000 was paid in full but that P would
then be required to continue making the monthly
payments towards the education of P and O's children
until the children completed 4 years of college.  In
1997, the court decreed that P make 42 additional
monthly payments totaling $33,500 to O's attorney as
additional alimony to O and that this additional
alimony was deductible by P and taxable income to O.
The 1997 decree also stated that this additional
alimony would terminate if O died before the $33,500
was paid in full but that P would then be required to
continue making the monthly payments to O's attorney
until the $33,500 was paid in full.  During 2000, P
paid $12,600 pursuant to the 1995 decree and $9,000
pursuant to the 1997 decree and claimed on his 2000
Federal income tax return that the total of $21,600 was

deductible as alimony.  In 2004, after P commenced this proceeding challenging R's disallowance of that deduction, the court restated in an order that it intended for Federal income tax purposes that all of the $117,000 and the $33,500 be alimony deductible by P and includable in O's income.  The court also stated in this order that P had as of then paid both of these amounts to O, who was still alive.

Held:  An alimony deduction for Federal income tax purposes rests on fulfilling the requirements set forth in sec. 71, I.R.C.  Sec. 71(b)(1)(D), I.R.C., provides that payments may qualify as alimony only if "there is no liability to make any such payment * * * as a substitute for such payments after the death of the payee spouse."

Held, further, in accordance with sec. 1.71-1T(b), Q&A-14, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984), the payments which P was liable to make upon O's death are substitute payments under sec. 71(b)(1)(D), I.R.C., in that those post death payments would begin as a result of O's death and would substitute for a continuation of the payments which terminated on O's death and which otherwise qualified as alimony.

Held, further, in accordance with sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., supra, the fact that P was liable to make the substitute payments means that P may not deduct any of the $21,600 as alimony for Federal income tax purposes, even though the $21,600 would have otherwise been deductible as such.


Michael J. Stengel, for petitioners.

James L. May, Jr., for respondent.

OPINION

LARO, <u>Judge</u>:  This case is before the Court for decision without trial.  See Rule 122.[1]  Petitioners petitioned the Court to redetermine a $7,031 deficiency in their 2000 Federal income tax.  We decide as to that year whether petitioners may deduct as alimony $21,600 that John R. Okerson (petitioner) paid pursuant to his divorce from his former wife, Barbara Buhr Okerson (Okerson).  We hold that petitioners may not deduct any of that amount.

<u>Background</u>

The facts in this background section are obtained from the parties' stipulation of facts and the exhibits submitted therewith.  Petitioners resided in Memphis, Tennessee, when their petition was filed.  Petitioner and his former wife, Okerson, have two children who were born on February 10, 1978, and April 3, 1983, respectively.

On August 31, 1994, a Tennessee State court (State court) issued an order awarding Okerson a divorce from petitioner.  On March 13, 1995, the State court entered a supplemental final decree of divorce (1995 decree) that in relevant part ordered, adjudged, and decreed as follows:

---

[1] Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise stated, section references are to the applicable versions of the Internal Revenue Code.

4.   JOHN RUSSELL OKERSON shall pay to BARBARA BUHR OKERSON One Hundred Seventeen Thousand ($117,000) Dollars as alimony necessary for her support as follows:  Six Hundred Fifty ($650.00) Dollars per month for twenty-one (21) months beginning September, 1994 through May, 1996; One Thousand Two Hundred Fifty ($1,250.00) Dollars per month for three months beginning June, 1996, through August, 1996; One Thousand Six Hundred ($1,600.00) Dollars per month for a period of thirty-six (36) months beginning September, 1996, through August, 1999; One Thousand Fifty ($1,050.00) Dollars per month for a period of thirty-six (36) months beginning September, 1999, through August, 2002; and Two Hundred Fifty ($250.00) Dollars per month for a period of sixteen months beginning September, 2002, through December, 2003; and the final payment of Two Hundred ($200.00) Dollars to be made in January, 2004.  Said payments shall be payable in two equal monthly payments on the 16th and 30th day of each month.  Said alimony shall terminate upon the death but not the remarriage of either JOHN RUSSELL OKERSON or BARBARA BUHR OKERSON and shall be modifiable only upon the showing of a substantial change in circumstances which was not contemplated by this Court at the time of the trial as set forth in the premises hereinabove.

5.   In the event that BARBARA BUHR OKERSON should die before JOHN RUSSELL OKERSON has satisfied his alimony obligation under this agreement, JOHN RUSSELL OKERSON agrees to make payments in an amount equal to his remaining alimony obligation for or on behalf of the education of the parties' two children for a period no longer than the period originally scheduled for the alimony payments or until the children have completed four years of undergraduate collegiate work, whichever occurs first.  In the event that a child does not pursue her college education after BARBARA BUHR OKERSON's demise then JOHN RUSSELL OKERSON's agreement for continuing support payments to that child equal to half of the remaining alimony payments shall cease.

6.   JOHN RUSSELL OKERSON shall pay to Larry Rice, Attorney, as alimony necessary for BARBARA BUHR OKERSON's support, the sum of Twelve Thousand Four Hundred Forty ($12,440.00) Dollars.  Five Thousand ($5,000.00) Dollars of said funds shall be paid to Larry Rice within sixty (60) days of September 7, 1994, and the remaining Seven Thousand Four Hundred Forty

($7,440.00) Dollars shall be paid to Larry Rice within ninety (90) days from September 7, 1994.

On October 2, 1997, the State court, upon remand of the case from a State appellate court, see Okerson v. Okerson, No. 02A01-9507-CV-00147 (Tenn Ct. App., Mar. 27, 1997), entered an order (1997 decree) that decreed as follows:

    1.  John Russell Okerson shall pay to Larry Rice, attorney for the Defendant [Barbara Buhr Okerson], for the benefit of Barbara Buhr Okerson, Thirty Three Thousand Five Hundred ($33,500.00) Dollars as alimony necessary for her support as follows:  Immediate payment of Seven Thousand Five Hundred ($7,500.00) Dollars; Seven Hundred Fifty ($750.00) Dollars per month for forty-one (41) months beginning October 1997, with the final payment February 2001.  Said alimony is taxable to the Defendant and deductible by the Plaintiff [petitioner] and shall terminate upon the death but not the remarriage of Barbara Buhr Okerson.

    2.  In the event that Barbara Buhr Okerson should die before John Russell Okerson has satisfied his alimony obligation under this agreement, John Russell Okerson agrees and is hereby ordered to make payments in an amount equal to his remaining alimony obligation to Larry Rice, attorney for the Defendant, for a period no longer than the period originally scheduled for the alimony payments or until an amount equal to his remaining alimony obligation (appellate attorney fees and expenses) has been satisfied.

During 2000, petitioner paid $12,600 pursuant to the 1995 decree and $9,000 pursuant to the 1997 decree.  On their joint 2000 Federal income tax return, petitioners claimed an alimony deduction for the total amount of $21,600.  Respondent disallowed that deduction in a notice of deficiency issued to petitioners on April 10, 2003.  On May 23, 2003, petitioners petitioned this Court to redetermine that disallowance.

On February 5, 2004, petitioner moved the State court to modify its final decree of divorce for alimony and attorney's fees. On March 29, 2004, the State court issued with respect to that motion an order stating as follows:

This cause came on to be heard, on March 19, 2004 upon Petition to Modify Final Decree of Divorce for Alimony and Attorney's Fees, filed February 05, 2004, by John Russell Okerson, through his Attorney, Charles A. Sevier. Upon Answer of Barbara Buhr Okerson to said Petition to Modify Final Decree of Divorce for Alimony and Attorney's Fees, personal service upon Barbara Buhr Okerson by certified mail, return receipt requested, argument of Counsel for John Russell Okerson, Charles A. Sevier, argument of Counsel for Barbara Buhr Okerson, Laura D. Rogers; upon Memorandum of Law in opposition to Petition to Modify Final Decree of Divorce for Alimony and attorney Fees; from all of which it appears to the Court as follows:

1. That on March 13, 1995, Judge Wyeth Chandler, Judge of Division I of the Circuit Court of Shelby County, Tennessee, entered a Supplemental Final Decree of Divorce in this Cause in which John Russell Okerson was ordered to pay certain sums of alimony to Barbara Buhr Okerson, including attorney fees to Larry Rice, as her attorney, as alimony necessary for Barbara Buhr Okerson's support, said sums totaling One Hundred Twenty Nine Thousand Four Hundred Forty ($129,440.00) Dollars, payable in installments;

2. That it was announced to the Court by Counsels for John Russell Okerson and Barbara Buhr Okerson that said amounts have been paid in full;

3. That John Russell Okerson by his attorney, states that in the trial transcript of this Cause held before the Honorable Wyeth Chandler, the Court clearly stated more than one time that the Court intended all ordered alimony to be tax deductible to John Russell Okerson and taxable income to Barbara Buhr Okerson;

4. It was announced to the Court that, despite said intention of the Court paragraph five (5) of the

Supplemental Final Decree of Divorce, entered March 13, 1995, contained language as follows:

> "5.    In the event BARBARA BUHR OKERSON should die before JOHN RUSSELL OKERSON has satisfied his alimony obligation under this agreement, JOHN RUSSELL OKERSON agrees to make payments in an amount equal to his remaining alimony obligation for or on behalf of the education of the parties' two children for a period no longer than the period originally scheduled for the alimony payments or until the children have completed four years of undergraduate collegiate work, whichever occurs first.  In the event that a child does not pursue her college education after BARBARA BUHR OKERSON's demise then JOHN RUSSELL OKERSON's agreement for continuing support payments to that child equal to half of the remaining alimony payments shall cease."

5.    It was announced to the Court that said paragraph quoted above has been construed by the Internal Revenue Service to question the intent of the Court in the entry of the Supplemental Final Decree of Divorce, entered March 13, 1995, that all alimony and attorney fees paid to Larry Rice, Esq., be tax deductible to John Russell Okerson and taxable income to Barbara Buhr Okerson.

6.    It further appeared to the Court that said paragraph five (5) quoted above contains language of contingency that did not occur and that therefore this Court should find as fact in this Cause that all of such alimony paid under the Supplemental Final Decree of Divorce in this Cause should be tax deductible to John Russell Okerson and taxable income to Barbara Buhr Okerson.

7.    It further appeared to the Court that in the Order on Motion for Appellate Attorney's Fees, entered October 02, 1997, in which John Russell Okerson was ordered to pay Larry Rice, then Attorney for Barbara Buhr Okerson, Thirty-Three Thousand Five Hundred ($33,500.00) Dollars in installments for appellate attorney fees, that said Order stated "Said alimony is taxable to the Defendant and deductible by the

Plaintiff and shall terminate upon the death but not remarriage of Barbara Buhr Okerson".

8.    It further appeared to the Court that in paragraph 2 in the Motion on Order for Appellate Attorney Fees the following appears:

> "2.    In the event Barbara Buhr Okerson should die before John Russell Okerson has satisfied his alimony obligation under this agreement, John Russell Okerson agrees and is hereby ordered to make payments in an amount equal to his remaining alimony obligation to Larry Rice, attorney for the Defendant, for a period no longer than the period originally scheduled for the alimony payments or until an amount equal to his remaining alimony obligation (appellate attorney fees and expenses) have been satisfied."

9.    It has been announced to the Court that said paragraph 2 appearing in the Order on Motion for Appellate Attorney Fees has been the basis of the Internal Revenue Service questioning the tax deductibility of said fees paid by John Russell Okerson.

10.    It is therefore held by this Honorable Court in regard to the Order of Motion for Appellate Attorney Fees that it was the stated intention of this Court to make said alimony payments, which have been paid in full by stipulation of the parties, taxable income to Barbara Buhr Okerson and tax deductible to John Russell Okerson as alimony.

11.    It further appeared to the Court that the paragraph 2 quote above contained a contingency that did not occur and therefore should not be the basis of confusion as to the Court's intention in this cause.

12.    It further appeared to the Court that notwithstanding Barbara Buhr Okerson's opposition to the Court's decision in this cause that the findings and holdings of this Order are hereby **ADJUDGED, ORDERED AND DECREED.**

## Discussion

We decide whether petitioners may deduct the $21,600 as alimony. Respondent determined they could not. Petitioners concede in brief that they must prove this determination wrong in order to prevail. The fact that this case was submitted to the Court on the basis of a fully stipulated record neither alters petitioners' burden of proof nor changes the requirements otherwise applicable with respect to adducing proof or the effect of a failure of proof. See Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 5 (1995), affd. 103 F.3d 104 (10th Cir. 1996).

An individual such as petitioner may generally deduct payments made during the taxable year to a spouse[2] to the extent that the payments are alimony that is includable in the spouse's gross income. See sec. 215(a) and (b). Payments are alimony that is includable in a spouse's gross income when each of the following requirements is met: (1) The payments are made in cash, (2) the payments are received by (or on behalf of) the spouse under a divorce or separation instrument, (3) the divorce or separation instrument does not provide that the payments are not reportable as alimony, (4) the spouses reside in separate households at the time the payments are made, (5) the spouses do not file a joint return, and (6) the payor spouse's liability for

---

[2] We use the term "spouse" to refer to a present or former spouse.

the payments, or for making other payments in substitute of those payments, does not continue for any period after the payee spouse's death. Sec. 71(b)(1), (e); see also sec. 71(c)(1) (a payee spouse's gross income does not include any part of a payment that a divorce or settlement agreement fixes as payable for the support of children of the payor spouse). We concern ourselves only with the requirement in dispute; i.e., the payor spouse's liability for the payments and for any substitute payments must cease as of the payee spouse's death. See sec. 71(b)(1)(D).[3] Whether a payor spouse is liable to make an alimony or substitute payment after a payee spouse's death is determined by looking first to the terms of the applicable divorce documents which, if they speak unambiguously as to this matter, are dispositive of the matter. See Hoover v. Commissioner, 102 F.3d 842 (6th Cir. 1996), affg. T.C. Memo. 1995-183. In construing these documents, the mere fact that the documents may characterize a payment as alimony has no effect on the consequences of that payment for Federal income tax purposes. Id. at 844.

---

[3] Sec. 71(b)(1)(D) provides that payments in cash qualify as alimony if "there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."

Here, petitioners acknowledge that the applicable divorce documents are the 1995 decree and the 1997 decree (collectively, the decrees) and that the decrees conflict with section 71(b)(1)(D) in that they state that, upon Okerson's death, petitioner must continue to make payments in the same amount as the payments which he must pay before her death. Petitioners argue, however, that the intent of the State court was to allow petitioner to deduct the $117,000 and $33,500 as alimony. Petitioners consider relevant the fact that petitioner paid both of these amounts during Okerson's lifetime and that he never had to pay any of the post death payments described in the decrees.

Petitioners focus erroneously on the intent of the State court as support for their argument that they are entitled for Federal income tax purposes to deduct the disputed payments as alimony. While State law establishes the property interests of divorcing parties, Federal law controls the Federal income tax treatment of those interests. Hoover v. Commissioner, supra at 844. Here, the applicable Federal law is set forth in section 71, which, in its present form, provides the exclusive means by which a taxpayer may deduct a payment as alimony for Federal income tax purposes. Id. at 844-845. Through that section, Congress eliminated any consideration of intent in determining the deductibility of a payment as alimony in favor of a more straightforward, objective test that rests entirely on the

fulfillment of explicit requirements set forth in section 71.

Id.; see also Rosenthal v. Commissioner, T.C. Memo. 1995-603

("Whether or not the parties intended for the payments to be

deductible to petitioner, we must focus on the legal effect of

the agreement in determining whether the payments meet the

criteria under section 71.").  As the House Committee on Ways and

Means articulated in its report on section 71 in discussing the

need for such an objective test:

> The committee believes that a uniform Federal standard
> should be set forth to determine what constitutes
> alimony for Federal tax purposes.  This will make it
> easier for the Internal Revenue Service, the parties to
> a divorce, and the courts to apply the rules to the
> facts in any particular case and should lead to less
> litigation.  The committee bill attempts to define
> alimony in a way that would conform to general notions
> of what type of payments constitute alimony as
> distinguished from property settlements and to prevent
> the deduction of large, one-time lump-sum property
> settlements.  [H. Rept. 98-432 (Pt. 2), at 1495-1495
> (1984).]

Although the parties to a divorce proceeding may intend that

certain payments be considered alimony for Federal income tax

purposes, and a court overseeing that proceeding may intend the

same, Congress has mandated through section 71(b)(1)(D) that

payments qualify as alimony for Federal income tax purposes only

when the payor's liability for those payments, or for any

payments which may be made in substitute thereof, terminates upon

the payee spouse's death.  Petitioners fail this requirement in

that both of the decrees state specifically and unequivocally

that petitioner's obligation to pay alimony will terminate upon the death of Okerson but that petitioner will then be liable to start making corresponding payments in substitute of the alimony payments.  The complete termination upon the death of the payee spouse of all payments made as alimony or in substitute thereof is an indispensable part of Congress's scheme for deducting a payment as alimony for Federal income tax purposes, and it is something that may not be overcome simply because the payor may establish an intent that the payments be deductible by the payor spouse as alimony.  As the House Committee on Ways and Means stated sweepingly in its report on section 71:  "In order to prevent the deduction of amounts which are in effect transfers of property unrelated to the support needs of the recipient, the bill provides that a payment qualifies as alimony only if the payor * * * has no liability to make any such payment for any period following the death of the payee spouse."  H. Rept. 98-432, supra at 1496.

Having decided that the definition of alimony for Federal income tax purposes turns on a fulfillment of the statutory test and not on the intent of the parties to a divorce proceeding or of the court overseeing that proceeding, we now turn to deciding whether the post death payments described in the decrees are substitute payments within the context of section 71(b)(1)(D). Under section 1.71-1T(b), Q&A-14, Temporary Income Tax Regs.,

49 Fed. Reg. 34456 (Aug. 31, 1984), payments are treated as substitute payments for purposes of section 71(b)(1)(D) to the extent that they would begin as a result of the payee spouse's death and would substitute for a continuation of payments which would otherwise qualify as alimony but which would terminate on account of the payee spouse's death.  See also H. Rept. 98-432, supra at 1496.  Such is the case here.  All of the post death payments described in the decrees would be made after Okerson's death, and they would be made only if Okerson died before petitioner satisfied his alimony obligations under the decrees. The post death payments also would be made in substitute of the alimony payments under the decrees, which would terminate on account of Okerson's death.

Petitioners rely erroneously upon the fact that petitioner never actually made one of these post death payments.  This fact is unimportant.  The standard established by Congress for substitute payments is not, as petitioners would have it, whether a payor spouse actually makes a substitute payment.  The standard, as gleaned from section 71(b)(1)(D), as well as from the regulations interpreting that section and from the legislative history, is whether the payor spouse could have to make a substitute payment upon the death of the payee spouse. Section 71(b)(1)(D) provides that payments qualify as alimony for Federal income tax purposes if the payments are made in cash and

"there is no liability to make any such payment * * * (in cash or property) as a substitute for such payments after the death of the payee spouse." The applicable regulations, specifically section 1.71-1T(b), Q&A-14, Temporary Income Tax Regs., supra,[4] state:

> To the extent that one or more payments are to begin to be made, increase in amount, or become accelerated in time as a result of the death of the payee spouse, such payments may be treated as a substitute for the continuation of payments terminating on the death of the payee spouse which would otherwise qualify as alimony or separate maintenance payments. * * *

The legislative history states:

> the bill provides that a payment qualifies as alimony only if the payor * * * has no liability to make any such payment for any period following the death of the payee spouse. A provision for a substitute payment, such as an additional amount to be paid as child support after the death of the payee spouse will prevent a corresponding amount of the payment to the payee spouse from qualifying as alimony. * * *
> [H. Rept. 98-432, supra at 1496.]

We conclude that all of the post death payments described in the decrees are substitute payments for purposes of section 71(b)(1)(D) and turn to decide the tax consequences that result from this characterization. Pursuant to section 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., supra, the fact that a payor spouse is required to make substitute payments means that none of

---

[4] While these temporary regulations were superseded in part by the technical correction provisions of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853, the portions of these temporary regulations that we rely upon herein were not affected by those provisions and continue to be effective.

the corresponding payments which otherwise qualified as alimony under section 71 are deductible as alimony.  See H. Rept. 98-432, supra at 1496; see also Cunningham v. Commissioner, T.C. Memo. 1994-474 ("If a payor spouse continues to be liable to make even one otherwise qualifying payment after the death of the payee spouse, none of the related payments required before the payee spouse's death will be alimony.").  Section 1.71-1T(b), Examples (1) and (2), Temporary Income Tax Regs., supra, illustrates this point.  Under Example (1), the divorce decree states that A must pay alimony to B in the form of six annual payments of $30,000. The decree also states that this obligation will terminate upon the death of B, but if any of the children of A and B are minors at that time, A must then make annual payments of $10,000 to a trust benefiting those children.  The example states that A's liability to make the $10,000 payments is a substitute for $10,000 of each of the $30,000 payments and that $10,000 of each $30,000 payment fails to qualify as alimony.  Under Example (2), the divorce decree states that A must pay alimony to B in the form of 15 annual payments of $30,000.  The decree also states that this obligation will terminate upon the death of B but that A must then pay any unpaid amount to B's estate in a lump sum. Example (2) states that A's liability to pay the lump sum is a substitute for the full amount of each of the $30,000 payments and that none of the $30,000 payments qualifies as alimony.

Example (2) also states that the result would be the same even if the lump sum was required to be discounted to reflect the prepayment.

Here, petitioner was required by the 1995 decree to pay Okerson monthly alimony totaling $117,000. This obligation would have terminated upon Okerson's death, but petitioner would then have been required to pay the unpaid alimony towards the education of his and Okerson's children until the children completed 4 years of college. Petitioner also was required by the 1997 decree to make additional monthly alimony payments totaling $33,500 to Okerson's attorney. This obligation also would have terminated upon the death of Okerson, but petitioner would then have been required to continue paying the unpaid amount to Okerson's attorney. Because under both decrees the substitute payments would have been the same amount as the amounts payable as alimony under the decrees, we conclude consistently with the temporary regulations and the examples set forth therein and discussed above that petitioner is not entitled to deduct any of the $21,600 as alimony for Federal income tax purposes.

In sum, when the terms of the applicable divorce documents state, as here, that the payor spouse upon the death of the payee spouse must continue to make payments in substitute of payments which are required to be paid as alimony, the post death payments

fail to qualify as alimony for Federal income tax purposes. In addition, a corresponding amount of any payment which is to be made before the payee spouse's death, and which otherwise would be deductible as alimony, fails to qualify as well. Because respondent determined as much with respect to the payments in dispute, we sustain that determination.

All arguments for a contrary result have been considered, and we have concluded that those arguments not discussed herein are without merit. Accordingly,

<u>Decision will be entered for respondent</u>.