T.C. Memo. 2014-117

UNITED STATES TAX COURT

ADRIO MICHAEL BAUR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21865-12.           Filed June 12, 2014.

Adrio Michael Baur, pro se.

E. Abigail Carlson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge: Respondent determined a deficiency in, and an accu-racy-related penalty under section 6662(a)[1] on, petitioner's Federal income tax (tax) for his taxable year 2010 of $6,757 and $1,351.40, respectively.

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]   The issues for decision for petitioner's taxable year 2010 are:

(1) Is petitioner entitled to deduct as alimony under section 215 certain payments that he made in excess of the amount of payments that respondent concedes is deductible alimony?  We hold that he is not.

(2) Is petitioner liable for the accuracy-related penalty under section 6662(a)?  We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Illinois at the time he filed the petition.

On June 20, 1982, petitioner married Judith L. Baur.  During their marriage, petitioner and Judith L. Baur had three children, AB, JB, and SB.

At a time not established by the record, petitioner and Judith L. Baur decided to end their marriage.  On February 24, 2009, the Circuit Court of Cook County, Illinois (Cook County Circuit Court), issued a final judgment titled "JUDGMENT FOR DISSOLUTION OF MARRIAGE" (dissolution judgment).  In the dissolution judgment, the Cook County Circuit Court found in pertinent part:

> The parties hereto have entered into a written Marital Settlement Agreement dated February 20, 2009, concerning the questions of the maintenance and medical requirements of the parties, custody, sup-port, visitation, the medical and educational requirements of the

[*3] parties' children, attorney's fees and costs, and the respective rights of each party in and to the property, income or estate which either of them now owns or may hereafter acquire, including a division of all marital and non-marital property, and other matters, which Agreement has been attached hereto and incorporated herein and presented to this Court for its consideration.

In the dissolution judgment, the Cook County Circuit Court ordered, adjudged, and decreed, inter alia, that the marriage between petitioner and Judith L. Baur be dissolved. The dissolution judgment also ordered, adjudged, and decreed:

> All of the provisions of the Marital Settlement Agreement between the Petitioner [Judith L. Baur] and the Respondent [petitioner] dated February 20, 2009, are expressly ratified, confirmed, approved and adopted as the orders of this Court to the same extent and with the same force and effect as if said provisions were in this paragraph set forth verbatim as the judgment of this Court; each of the parties hereto shall perform under the terms of said Agreement.

The "Marital Settlement Agreement dated February 20, 2009" (settlement agreement) to which the above-quoted order in the dissolution judgment referred provided in pertinent part:

## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT made and entered into this 20th day of February, 2009, in the City of Chicago, County of Cook and State of Illinois, by and between JUDITH BAUR, hereinafter referred to as "JUDITH", and ADRIO BAUR, hereinafter referred to as "ADRIO".

[*4]                              WITNESSETH:

WHEREAS:

*         *         *         *         *         *         *

G.      Both parties expressly state that they have freely and voluntarily entered into this Agreement of their own volition, free from any duress or coercion and with full knowledge of each and every provision contained in this Agreement and the consequences thereof. * * *

*         *         *         *         *         *         *

NOW, THEREFORE, in consideration of the mutual and several promises and undertakings contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do freely and voluntarily agree to each and every term and provision set forth in this MARITAL SET-TLEMENT AGREEMENT.

*         *         *         *         *         *         *

## ARTICLE II
## UNALLOCATED MAINTENANCE & CHILD SUPPORT

2.1      Commencing March 1, 2009, ADRIO shall pay JUDITH, as and for unallocated maintenance and child support, the sum of Three Thousand Seven Hundred Fifty Dollars ($3,750.00) per month. Payments shall be made on a bi-weekly basis at the rate of One Thousand Seven Hundred Thirty Dollars and Seventy Seven Cents ($1,730.77) per payment. The payments shall be withheld from ADRIO's paycheck and sent directly to JUDITH or by way of direct deposit in an account in JUDITH's name. This amount is based upon ADRIO's current gross base income of $9,867.00 per month.

**[*5]** In addition, ADRIO shall pay forty five percent (45%) of any and all net bonuses he receives within thirty (30) days of receipt and he shall tender proof of bonuses and commissions within one (1) week of receipt.

This amount and bonus percentage shall be reviewed in two years without the necessity of filing a Petition to Review. * * *

\*       \*       \*       \*       \*       \*       \*

2.3     The payments set forth in this Article shall terminate upon the first to occur of any of the following events:

(a)     The death of JUDITH;

(b)     The death of ADRIO;

(c)     The remarriage of JUDITH;

(d)     The cohabitation by JUDITH with a non-related person on a resident, continuing conjugal basis.

\*       \*       \*       \*       \*       \*       \*

2.5     In the event that * * * [SB] is emancipated and * * * [JB] is living independently or outside JUDITH's residence, without any financial support from JUDITH for any essentials or living expenses including clothing, personal care, room, board, schooling and the like, then the unallocated support shall be modified to maintenance and ADRIO shall pay to JUDITH One Thousand Eight Hundred Dollars ($1,800) per month, subject to review if either party files a petition to review.  This amount is based upon ADRIO's current earnings.

2.6     The sums paid by ADRIO to JUDITH pursuant to this Article are acknowledged to be paid incident to the Judgment for Dissolution of Marriage and in discharge of ADRIO's legal obliga-tion to support JUDITH.  Said sums shall be includable in the gross

[*6] income of JUDITH and deductible from the gross income of ADRIO within the meaning and intent of Sections 71 and 215 of the United States Internal Revenue Code of 1986, The Tax Reform Acts of 1984 and 1986, as amended, or of any identical or comparable provision of a federal revenue code hereinafter enacted or modified.

Pursuant to paragraph 2.1 of the settlement agreement, during 2010 petitioner made to Judith L. Baur 26 payments of $1,730.77, or a total of $45,000.02 (paragraph 2.1 payments), as "unallocated maintenance and child support".

Around April 4, 2010, petitioner received a net bonus of $8,040.29. Although paragraph 2.1 of the settlement agreement required petitioner to pay to Judith L. Baur 45 percent of the net amount of that bonus, he did not do so during 2010.

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2010 (2010 return). In the 2010 return, petitioner claimed an alimony deduction under section 215(a) for $41,695[2] (claimed alimony deduction) of the paragraph 2.1 payments.

On June 18, 2012, respondent issued to petitioner a notice of deficiency (notice) with respect to his taxable year 2010. In that notice, respondent disallowed $26,143 of the claimed alimony deduction and allowed $15,552 of that

---

[2]According to petitioner, he mistakenly claimed in his 2010 return an alimony deduction under sec. 215(a) for $41,695 of the paragraph 2.1 payments, instead of a deduction for the entire amount of $45,000.02.

[*7] deduction.[3]  In the notice, respondent also determined that petitioner is liable for his taxable year 2010 for the accuracy-related penalty under section 6662(a).

On September 6, 2012, after respondent issued the notice to petitioner, the Cook County Circuit Court issued an order (September 6, 2012 order) that provided in pertinent part:

> THIS MATTER, coming to be heard on Respondent's Petition to Clarify Intent of the Judgment for Dissolution of Marriage, * * * the Court * * * HEREBY FINDS:
>
> 1.    * * * [T]hat the provision in the Judgment for Dissolution of Marriage concerning unallocated support is intended to be maintenance, for the support of JUDITH BAUR;
>
> 2.    All payments made from ADRIO BAUR to JUDITH BAUR from the date the Judgment for Dissolution of Marriage was entered, that is, $3,750.00 per month (plus 45% of any bonuses) from February 29, 2009 to the present date have been and continue to be maintenance to JUDITH BAUR, until further order of Court;
>
> 3.    It was the intent of the Court that all payments made from ADRIO BAUR to JUDITH BAUR from February 29, 2009 to the present date as referenced in the finding of the second paragraph are to be includible in income to JUDITH BAUR and deductible for income tax purposes for ADRIO BAUR and shall terminate upon the death of ADRIO, the death of JUDITH, JUDITH's remarriage, or the

---

[3]Respondent concedes on brief (1) that, pursuant to paragraph 2.1 of the settlement agreement, during 2010 petitioner paid a total of $45,000.02 to Judith L. Baur as "unallocated maintenance and child support" and (2) that petitioner is entitled for his taxable year 2010 to an alimony deduction of $17,981.89 and not $15,552 as respondent determined in the notice.

[*8] cohabitation of JUDITH on a resident, conjugal basis, or further order of Court;

4.      Paragraph 2.5[4] of the Judgment is a scrivener error and should be vitiated nunc pro tunc;

In the September 6, 2012 order, the Cook County Circuit Court ordered:

1)      All payments made to JUDITH BAUR from ADRIO BAUR pursuant to Section 2.1 of the Judgment for Dissolution of Marriage entered March 26, 2009, specifically the $3,750.00 per month and 45% of net bonuses were intended and shall be maintenance to JUDITH BAUR.  As such, all payments are includible in JUDITH BAUR's income and deductible from ADRIO BAUR's income for income tax purposes.  Said payments shall be reviewable pursuant to Section 504 and 510 of the IMDMA [Illinois Marriage and Dissolution of Marriage Act] and shall terminate upon further order of Court, JUDITH's death, ADRIO's death, JUDITH's remarriage, or JUDITH residing on a conjugal basis with another person.

2)      Paragraph 2.5[5] of the Judgment for Dissolution was not intended to be part of the Judgment for Dissolution and was a scrivener error.  Accordingly, paragraph 2.5 of the Judgment for Dissolu-

---

[4]Paragraph 2.5 of the settlement agreement (quoted above) provided:

2.5    In the event that * * * [SB] is emancipated and * * * [JB] is living independently or outside JUDITH's residence, without any financial support from JUDITH for any essentials or living expenses including clothing, personal care, room, board, schooling and the like, then the unallocated support shall be modified to maintenance and ADRIO shall pay to JUDITH One Thousand Eight Hundred Dollars ($1,800) per month, subject to review if either party files a petition for review.  This amount is based upon ADRIO's current earnings.

[5]See supra note 4.

[*9] tion of Marriage is vitiated nunc pro tunc as if it never had any legal effect.

OPINION

Petitioner bears the burden of establishing that the determinations in the notice that remain at issue are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We turn initially to the issue presented under section 215. It is petitioner's position that the entire amount (i.e., $45,000.02) of the paragraph 2.1 payments that he made during 2010 to Judith L. Baur constitutes alimony deductible under section 215. It is respondent's position that $17,981.89 of those payments constitutes alimony deductible under that section.[6]

Section 215(a) allows an individual to deduct "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." Section 215(b) defines the term "alimony or separate maintenance payment" for purposes of section 215 to mean "any alimony or separate maintenance

---

[6]The difference between the entire amount (i.e., $45,000.02) of the paragraph 2.1 payments that petitioner maintains constitutes alimony deductible under sec. 215 and the amount (i.e., $17,981.89) of those payments that respondent maintains constitutes alimony deductible under that section is $27,018.13.

**[*10]** payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b)(1) provides the following definition of the term "alimony or separate maintenance payment":

> SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
>
> (b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

**[*11]** Section 71(a) provides that "[g]ross income includes amounts received as alimony or separate maintenance payments." Section 71(c)(1) provides that section 71(a) "shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse." The Supreme Court of the United States has held that "the allocations to child support made therein [in a divorce or separation instrument] must be 'specifically designated' and not left to determination by inference or conjecture." Commissioner v. Lester, 366 U.S. 299, 306 (1961).

Section 71(c)(2) provides that if any amount specified in a divorce or separation instrument is to be reduced (1) upon the occurrence of a contingency specified in that instrument relating to a child (e.g., attaining a specified age, marrying, dying, leaving school, or a similar contingency) or (2) at a time that can clearly be associated with that kind of contingency, an amount equal to the amount of such reduction is to be treated for purposes of section 71(c)(1) as an amount fixed as payable for the support of children of the payor spouse.

Respondent argues that, because of paragraph 2.5[7] of the settlement agreement, section 71(c)(2) requires that a part of the paragraph 2.1 payments be treated

_____

[7]See supra note 4.

**[\*12]** under section 71(c)(1) "as a sum which is payable for the support of children of the payor spouse [petitioner]." Petitioner counters that the Cook County Circuit Court's September 6, 2012 order retroactively vitiated paragraph 2.5 of the settlement agreement for tax purposes. We must determine what, if any, effect we should give to that purported nunc pro tunc order. In making that determination, we have in mind that "the definition of alimony for Federal income tax purposes turns on a fulfillment of the statutory test [in section 71] and not on the intent of the parties to a divorce proceeding or of the court overseeing that proceeding". Okerson v. Commissioner, 123 T.C. 258, 266 (2004). We also have in mind what we stated in Gordon v. Commissioner, 70 T.C. 525, 530 (1978):

> State court adjudications retroactively redesignating divorce-related payments as alimony and not child support (or vice versa) are generally disregarded for Federal income tax purposes if the order retroactively changes the rights of the parties or the legal status of the payments. An exception to this rule is made when a retroactive judgment corrects a divorce decree that mistakenly failed to reflect the true intention of the court at the time the decree was rendered. * * * [Citations omitted.]

In the dissolution judgment, the Cook County Circuit Court, inter alia, adopted all of the provisions of the settlement agreement as part of that judgment and ordered petitioner and Judith L. Baur to comply with all of those provisions "as if said provisions were in this paragraph set forth verbatim as the judgment of

[*13] this Court". That agreement, which by its terms was "freely and voluntarily entered into" by petitioner and Judith L. Baur "with full knowledge of each and every provision contained in this Agreement and the consequences thereof" and which the Cook County Circuit Court adopted and made part of the divorce judgment,[8] unambiguously provided in paragraph 2.5 for a reduction in the payments required under paragraph 2.1 of that agreement upon the occurrence of certain contingencies relating to SB and JB.

On the record before us, we reject the statement in the Cook County Circuit Court's September 6, 2012 order that "[p]aragraph 2.5[9] of the Judgment for Dissolution was not intended to be part of the Judgment for Dissolution and was a scrivener error."[10] On that record, we find that petitioner and Judith L. Baur as

---

[8]In the divorce judgment, the Cook County Circuit Court ordered:

All of the provisions of the Marital Settlement Agreement between the Petitioner [Judith L. Baur] and the Respondent [petitioner] dated February 20, 2009, are expressly ratified, confirmed, approved and adopted as the orders of this Court to the same extent and with the same force and effect as if said provisions were in this paragraph set forth verbatim as the judgment of this Court; each of the parties hereto shall perform under the terms of said Agreement.

[9]See supra note 4.

[10]Black's Law Dictionary 1466 (9th ed. 2009) refers the user to the term "clerical error" for the definition of the term "scrivener's error". That dictionary

(continued...)

[*14] well as the Cook County Circuit Court intended that paragraph 2.5 be part of the settlement agreement and the dissolution judgment at the time that court entered that judgment. The Cook County Circuit Court issued its September 6, 2012 order only after respondent issued on June 18, 2012, the notice to petitioner for his taxable year 2010 in which respondent determined, because of paragraph 2.5 of the settlement agreement, to disallow as deductible alimony certain payments that he had made to Judith L. Baur.

On the record before us, we find that the inclusion of paragraph 2.5 in the settlement agreement and the dissolution judgment was not a mistake by petitioner and Judith L. Baur or by the Cook County Circuit Court. On that record, we conclude that the Cook County Circuit Court's September 6, 2012 order did not correct a mistake in the dissolution judgment. On the record before us, we conclude that we will give no effect to the purported nunc pro tunc September 6, 2012 Cook County Circuit Court order.

---

[10](...continued)
provides the following definition of the term "clerical error": "An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." Id. at 622. For reasons set forth in the text, we conclude that paragraph 2.5 of the settlement agreement was not, as the Cook County Circuit Court indicated in its September 6, 2012 order, "a scrivener error".

**[*15]** Based upon our examination of the entire record before us, we sustain respondent's position on brief that $27,018.13 of the paragraph 2.1 payments totaling $45,000.02 does not constitute alimony deductible under section 215.

We turn next to the issue presented under section 6662(a). Section 6662(a) imposes an accuracy-related penalty of 20 percent on the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable person would do under the circumstances. See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), aff'g T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2) an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax

[*16] shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to the accuracy-related penalty under section 6662(a). See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Although respondent bears the burden of production with respect to the penalty under section 6662(a), respondent "need not introduce evidence regarding rea-

[*17] sonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." See id.

We have found that petitioner is not entitled for his taxable year 2010 to deduct $27,018.13 as alimony under section 215(a). As a result, there is an underpayment of tax for petitioner's taxable year 2010. Respondent argues that that underpayment is attributable to a substantial understatement of tax in petitioner's 2010 return and that therefore the accuracy-related penalty under section 6662(a) should be imposed on petitioner. Petitioner's only argument with respect to the accuracy-related penalty under section 6662(a) is that there was no underpayment of tax in his 2010 return.

On the record before us, we conclude that the accuracy-related penalty under section 6662(a) will be imposed if the computations under Rule 155 result in an understatement of tax for petitioner's taxable year 2010 that exceeds the greater of 10 percent of the tax required to be shown in his 2010 return or $5,000.[11] See sec. 6662(d)(1)(A).

---

[11]Respondent does not argue on brief that the underpayment for petitioner's taxable year 2010 was attributable to negligence or disregard of rules or regulations under sec. 6662(b)(1). Nor does petitioner claim that that underpayment was not due to negligence or disregard of rules or regulations. Because neither party advances any argument under sec. 6662(b)(1), we do not address whether the underpayment for petitioner's taxable year 2010 was due to

(continued...)

**[*18]** We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[11](...continued)
negligence or disregard of rules or regulations. However, on the record before us, we find that petitioner has failed to show that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment for his taxable year 2010.