T.C. Summary Opinion 2017-3


UNITED STATES TAX COURT


MARK A. QUINTAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25999-15S.                    Filed February 2, 2017.


<u>Gregory Jon Koldys</u>, for petitioner.

<u>Janet F. Appel</u> and <u>Derek W. Kelley</u>, for respondent.


SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
                                                                    (continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioner is liable for a Federal income tax deficiency of $15,210 and an accuracy-related penalty under section 6662(a) of $3,042 for each of the taxable years 2011, 2012, and 2013 (years in issue). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in Massachusetts.

This case is before the Court on respondent's motion for summary judgment, with a supporting declaration, filed pursuant to Rule 121. Petitioner filed an opposition to motion for summary judgment, a memorandum of law, and a first amendment to memorandum of law. The parties agree that there is no dispute as to any material fact relevant to the disposition of this matter. The sole question to be decided is whether payments that petitioner made to Ms. Gramlich-Quintal during the years in issue constitute alimony as defined in section 71(b) that he is entitled to deduct pursuant to section 215.

---

[1](...continued)
Code, as amended and in effect for 2011, 2012, and 2013, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

Background[2]

Petitioner and Ms. Gramlich-Quintal married on August 1, 1992, and they had three children. They later separated and divorced in 2010.

I. Separation and Property Settlement Agreement

On October 29, 2009, petitioner and Ms. Gramlich-Quintal executed a separation and property settlement agreement (separation agreement), which included exhibits A through M which were incorporated in the separation agreement by reference. The separation agreement stated that Ms. Gramlich-Quintal was awarded physical custody of the three children and that the parties intended that the separation agreement resolve all matters between them, including past, present, and future alimony and support and maintenance (citing Mass. Ann. Laws ch. 208, secs. 28 and 34 (LexisNexis 2011), which refer to child and spousal support, respectively). The separation agreement further stated that the children "are still principally dependent upon the parties for support and entitled to support pursuant to provisions of MGL, Ch. 208, Sect. 28."

Before the separation agreement was executed, petitioner and Ms. Gramlich-Quintal engaged in last-minute negotiations, and several of the exhibits

[2]The following background facts are not in dispute and are drawn from the pleadings and other documents making up the record in this case.

were substantially revised. In some instances, entire paragraphs of an exhibit were lined through and replaced with handwritten statements.

Exhibit A stated in relevant part that petitioner would maintain his current health insurance coverage or its equivalent for the benefit of his children as long as each child was "unemancipated as that term is defined herein." Exhibit A did not include a definition of the term "unemancipated".

Exhibit B, originally titled "ALIMONY", was revised to read "Unallocated Support". Exhibit B stated in part that petitioner would "pay to * * * [Ms. Gramlich-Quintal] the sum of $900.00 per week commencing forthwith by implemented wage assignment. (See Exhibit J)" and that "[a]ny alimony payments shall terminate" upon the earlier of the death of petitioner or Ms. Gramlich-Quintal or the latter's remarriage. Exhibit B further stated that the parties "acknowledge that husband anticipates that the above payment is deductible to him and includable to wife".

Exhibit J was titled "CUSTODY, SUPPORT, VISITATION". Although exhibit J originally referred to petitioner's obligation to make child support payments, that statement was lined through and was replaced with the phrase "See Exhibit B implemented wage assignment forthwith." Exhibit J included a statement acknowledging that, as a result of disabilities, two of the couple's

children might never become self-sufficient or emancipated and defined the term "emancipation" of the minor children generally as occurring on the child's death, marriage, entering into military service, or graduation from high school or a four-year college program.

Exhibit J further stated:

Support as to the child as termed in this agreement shall end upon emancipation.

In accordance with Section 71(b)(1)(B) of the Code, the Husband and Wife expressly agree to designate and hereby do designate all payments required in this Exhibit as excludable and non-deductible payments for purposes of Sections 71 and 215 of the Code, respectively.

It is expressly agreed and understood that the payments made by the Husband to the Wife for support under this Article shall terminate upon his death and shall not constitute a charge upon his estate in that there are to be life insurance trusts established to provide for the needs of the children.

The remainder of exhibit J established the terms for custody of and visitation with the children.

The Probate and Family Court of Massachusetts (family court) entered a Judgment of Divorce Nisi which incorporated the separation agreement and terminated the couple's marriage effective January 28, 2010.

On October 22, 2014, the family court filed a stipulation for judgment in response to Ms. Gramlich-Quintal's complaint for modification and petitioner's counterclaim. The stipulation for judgment, which was incorporated into the final judgment, stated in relevant part: "That the Father pay to the Mother $900 per week as child support for the parties' three children."

II. Petitioner's Income Tax Returns

Petitioner filed Federal income tax returns for the taxable years 2011, 2012, and 2013, and on each return he claimed a deduction of $46,800 for alimony paid to Ms. Gramlich-Quintal. Ms. Gramlich-Quintal, however, did not report the payments as income on her tax returns.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits * * * , if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b).

Section 71(a) provides the general rule that gross income includes amounts received as alimony or separate maintenance payments. Section 215(a) allows a deduction to the payor for an amount equal to the alimony paid during the taxable year to the extent it is includable in the recipient spouse's gross income under section 71(a).

Whether a payment constitutes alimony is determined by reference to section 71(b)(1), which defines "alimony" as any cash payment if (A) the payment is received by a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under section 71 and not allowable as a deduction under section 215, (C) the payor and payee spouses are not members of the same household when the payment is made, and (D) the payment obligation terminates at the death of the payee spouse and there is no liability to make either a cash or a property payment as a substitute for the payment after the death of the payee spouse.

Section 71(c)(1) provides the general rule that subsection (a) shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse. Under section 71(c)(2),

however, if any amount specified in the divorce instrument "will be reduced" on the happening of a contingency specified in the instrument that relates to a child of the payor spouse, then an amount equal to the amount that "will be reduced" is treated as fixed as a sum payable for the support of the children of the payor spouse. Events that relate to a child of the payor spouse include the child's attaining a specified age or income level, dying, marrying, leaving school, leaving the payee spouse's household, or gaining employment. Sec. 71(c)(2)(A).

Respondent concedes that petitioner's support payments to Ms. Gramlich-Quintal satisfy the requirements of subparagraphs (A), (C), and (D) of section 71(b)(1). Respondent contends, however, that petitioner's payments do not constitute alimony because, contrary to subparagraph (B) of section 71(b)(1), exhibit J (incorporated by reference in the separation agreement) states: "In accordance with Section 71(b)(1)(B) of the Code, the Husband and Wife expressly agree to designate and hereby do designate all payments required in this Exhibit as excludable and non-deductible payments for purposes of Sections 71 and 215 of the Code, respectively."

In the alternative, respondent again points to exhibit J and maintains that, because the unallocated support payments are subject to contingencies involving

petitioner's children, they are considered payments made for the support of petitioner's children in accordance with section 71(c)(2).

Petitioner relies on exhibit B of the separation agreement, which expressly provides for "unallocated support" payments, as opposed to alimony or child support payments. Noting that exhibit J does not expressly require any form of payment, petitioner avers that the statement in exhibit J that respondent relies upon is not relevant to the question whether the disputed payments constitute alimony. Petitioner further asserts that the parties' last-minute negotiations and revisions to the separation agreement were intended to ensure that the disputed payments would be treated as alimony for purposes of sections 71 and 215.

As an initial matter, we reject petitioner's contention that we should evaluate his and Ms. Gramlich-Quintal's intent regarding the characterization of the disputed payments. As we have explained in the past: "Congress eliminated any consideration of intent in determining the deductibility of a payment as alimony in favor of a more straightforward, objective test that rests entirely on the fulfillment of explicit requirements set forth in section 71." See Okerson v. Commissioner, 123 T.C. 258, 264-265 (2004) (citing Hoover v. Commissioner, 102 F.3d 842, 844-845 (6th Cir. 1996), aff'g T.C. Memo. 1995-183).

Under the circumstances, we focus on the requirement in section 71(b)(1)(B) that the settlement agreement not state that the payment is neither includible in gross income nor allowable as a deduction. We acknowledge, as petitioner contends, that exhibit J does not expressly require any payment or otherwise fix an amount to be paid as alimony or child support. Petitioner's narrow focus on this aspect of exhibit J, however, gives no effect to the cross-references in exhibits B and J. As we see it, a proper consideration of the separation agreement requires a construction of the document as a whole, including the exhibits and the cross-references within the exhibits. "Where a separation agreement sets the parties' support obligations, the language of the contract, if plain and unambiguous, must be construed in accordance with its ordinary and usual sense." Shaw v. Turcotte, 922 N.E.2d 179, 2010 WL 565388, at *2 (Mass. App. Ct. 2010) (quoting Larson v. Larson, 28 Mass. App. Ct. 338, 340 (1990)).

Reading the separation agreement as a whole, we conclude that exhibits B and J must be read in tandem and that the unallocated support payments prescribed in exhibit B are subject to the provisions of both that exhibit and exhibit J. In this regard, the handwritten revisions to the settlement agreement were poorly conceived. Specifically, although exhibit B was revised to state that the parties

"acknowledge that husband <u>anticipates</u> that the above [unallocated support] payment is deductible to him and includable to wife" (emphasis added), exhibit J states more definitively: "In accordance with Section 71(b)(1)(B) of the Code, the Husband and Wife expressly agree to designate and hereby do designate all payments required in this Exhibit as excludable and non-deductible payments for purposes of Sections 71 and 215 of the Code, respectively." We conclude that the latter, more definitive statement controls in this case. Because the settlement agreement provides that the unallocated support payments are excludable from income and not allowable as deductions, it follows that the payments do not satisfy the definition of alimony under section 71(b)(1)(B). Accordingly, we conclude that respondent is entitled to judgment as a matter of law sustaining the determinations set forth in the notice of deficiency.[3]

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[3]Under the circumstances, we need not consider respondent's alternative argument that the unallocated support payments constitute child support payments under sec. 71(c)(2).